UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON N. LONG,<br><br>            Plaintiff,<br><br>    v.<br><br>OFFICER HUMAYUN MOHAMMAD;<br>OFFICER ERIN KOLB; OFFICER KORY<br>HOWARD; LIEUTENANT ROBERT<br>HOWARD; RYAN GAMBLE; CAPTAIN<br>BRIAN CROWL; WARDEN RANDY<br>VALLEY; DEPUTY WARDEN COLIN<br>YOUNG; IDAHO STATE POLICE; SGT.<br>SEAN SLAY; OFFICER ENGLESON;<br>ERICA WEEKLEY; UNIDENTIFIED<br>RESPONSE TEAM OFFICERS; and<br>UNIDENTIFIED ISCC SHIFT<br>COMMANDER,<br><br>            Defendants.[1] | Case No. 1:25-cv-00375-AKB<br><br>**INITIAL REVIEW ORDER BY<br>SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Jason N. Long's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be

---

[1]    Although Defendants Young, Engleson, Weekley, the Idaho State Police, and the unidentified Defendants are not listed in the caption of the Complaint, the body of the pleading shows that Plaintiff intended to sue these Defendants as well. *See Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant.").

granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Having reviewed the record, the Court enters the following Order permitting Plaintiff to proceed on some of the claims in the Complaint.

## 1.    Standards of Law for Screening Complaints

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2.      **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction. Plaintiff alleges that Defendant Correctional Officer Mohammad sexually abused Plaintiff on numerous occasions. *Compl*., Dkt. 3, at 2. Plaintiff also claims that Mohammad and other Defendants used excessive force against him, subjected him to unconstitutional conditions of confinement, retaliated against him, and violated his right to due process. Plaintiff seeks monetary damages. *Id*. at 8.

3.      **Discussion**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct, *Taylor*, 880 F.2d at 1045, and a defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id.* at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or

training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### A.    *Eighth Amendment Claims*

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment and guarantees the right to minimally adequate conditions of confinement. "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, a prisoner must show that he is (or was) "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendant's actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the

deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Whitley*, 475 U.S. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks and alteration omitted).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d 1060. Moreover, even prison officials who *did* actually know of a substantial

risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

i.    <u>Excessive Force Claims</u>

The Eighth Amendment prohibits prison officials from using excessive force against inmates. "[T]he subjective inquiry for excessive force claims 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). "This standard necessarily involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). Therefore, a prisoner asserting an excessive force claim must show "malicious and sadistic force, not merely objectively unreasonable force." *Id*. Because "corrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance," courts must afford prison staff "wide-ranging deference" in this analysis. *Bearchild*, 947 F.3d at 1140 (internal quotation marks omitted).

Not every "malevolent touch" by a prison guard gives rise to a constitutional violation. *Hudson*, 503 U.S. at 9. A *de minimis* use of physical force does not violate the Eighth Amendment, so long as "the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 10. Rather, in addition to showing that prison officials used force maliciously and sadistically, a prisoner asserting an excessive force claim must "objectively show that he was deprived of something sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (internal quotation marks omitted).

A court considers five factors in analyzing whether the objective component has been met: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the

relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (internal quotation marks omitted).

Plaintiff claims that Defendants Mohammad and Kory Howard, along with several unidentified Defendants, used excessive force against Plaintiff by, among other things, spraying Plaintiff with OC spray and overextending his joints even though he was complaint with officers' orders. *Compl*. at 3–5. Plaintiff also alleges that Defendant Kolb witnessed this use of excessive force but did not intervene. *Id*. at 3. Based on these allegations, the Court concludes that Plaintiff's excessive force claims against Defendants Mohammad, Kory Howard, and Kolb are plausible.

Though Plaintiff also appears to assert an excessive force claim against Defendant Crowl, the Complaint alleges only that Plaintiff reported the use of excessive force and that Crowl "ignored [Plaintiff] and gave [him] a written response" that Crowl did "not have a part in that." *Compl*. at 6. Plaintiff has not plausibly alleged that Crowl personally participated in the excessive use of force or that Crowl knew of and failed to prevent it. *See Taylor*, 880 F.2d at 1045; *Shehee*, 199 F.3d at 300.

ii.     Sexual Abuse Claims

Prisoners have an Eighth Amendment right to be free from sexual abuse by prison officials. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). Such claims are analyzed using an excessive force framework. *Bearchild*, 947 F.3d at 1140.

Sexual abuse by a prison guard is conduct which is "inconsistent with contemporary standards of decency and repugnant to the conscience of mankind," and therefore violates the Eighth Amendment. *Whitley*, 475 U.S. at 327 (internal quotation marks omitted). "Because there is no legitimate penological purpose served by a sexual assault, the subjective component of malicious and sadistic intent is presumed if an inmate can demonstrate that a sexual assault

occurred." *Bearchild*, 947 F.3d at 1143 (9th Cir. 2020) (internal quotation marks omitted). That is, "any act constituting sexual assault is by definition both excessive and unnecessary." *Id*. at 1145.

An inmate states a colorable sexual abuse claim by plausibly alleging that "a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Id*. at 1144.

The Complaint alleges that Defendant Mohammad sexually abused Plaintiff by groping him and forcing him to let Mohammad touch Plaintiff's genitals. *Compl*. at 2–3. Defendant Kolb allegedly witnessed the abuse but did not intervene.

Plaintiff's sexual abuse claims against Defendants Mohammad and Kolb are plausible, and he will be allowed to proceed on those claims at this time.

However, the Complaint does not state a plausible sexual abuse claim against Defendant Crowl. As with Plaintiff's excessive force claim against Crowl, the only allegation against Crowl with respect to Plaintiff's sexual abuse is that, when Plaintiff filed a grievance about Mohammad's abuse, Crowl "ignored [Plaintiff] and gave [him] a written response" that Crowl did "not have a part in that." *Id*. at 6. Plaintiff has not plausibly alleged that Crowl personally participated in the sexual abuse or that Crowl knew of and failed to prevent it. *See Taylor*, 880 F.2d at 1045; *Shehee*, 199 F.3d at 300.

### iii.    Unsanitary Conditions Claim

A "severe or prolonged" lack of sanitation can violate the Eighth Amendment. *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995). However, unsanitary conditions do not give rise to a constitutional violation if they are merely temporary. *Id.* at 1315. "Conditions, such as a

filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).

Plaintiff claims that, after he was sprayed with OC spray, an unidentified shift commander denied Plaintiff access to clean water to rinse his eyes. Instead, the shift commander "forced [Plaintiff] to use feces contaminated toilet water to wash [his] eyes." *Compl.* at 4. Plaintiff lost his vision in one of his eyes as a result.

Liberally construed, the Complaint appears to state a plausible claim of unsanitary conditions against the unidentified shift commander.

iv.    <u>Verbal Threats and Harassment Claims</u>

Verbal harassment, abuse, or threats, without more, are not sufficient to state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 137–39 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (allegations that defendant "personally informed plaintiff that if he never cut his hair and shaved his beard that he would lose what class he had and would have a bad time at Wrightsville" and that defendant "verbally abused and threatened him for filing grievances" did not constitute a constitutional violation); *McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) ("While twenty-two officers armed with sticks and threatening demeanor may arguably be excessive, we must, in the absence of physical abuse, concur with the lower court's dismissal. The alleged conduct, absent more, cannot be said to rise to the level of conduct which 'shocks the conscience.'") (citation omitted).

Inmates do have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The United States

Supreme Court has emphasized, however, that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by prison officials' "deliberate indifference to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002) (internal quotation marks omitted). Further, in *McKune v. Lile*, the Court noted that, in determining whether a constitutional claim lies, "[c]ourts must decide whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." 536 U.S. 24, 41 (2002).

Sexual harassment can constitute calculated harassment unrelated to prison needs, but an isolated incident of sexual harassment does not rise to the level of a constitutional violation unless it is severe. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (no Eighth Amendment violation where officer "approached [an inmate] while [the inmate] was still on the toilet, rubbed his thigh against [the inmate's] thigh, began smiling in a sexual [context], and left the cell laughing."); *Somers v. Thurman*, 109 F.3d 614, 616, 623-24 (9th Cir. 1997) (no Eighth Amendment violation where female officers conducted visual body cavity searches of male inmates and watched the inmates shower, all while pointing at the inmates, gawking, and joking among themselves).

The Complaint alleges that Defendant Mohammad menaced Plaintiff through an entire shift, "threatening to beat, rape, and kill" Plaintiff. *Compl*. at 2. Plaintiff also claims that after he was subjected to excessive force, Defendant Gamble came to Plaintiff's cell to take photographs; Gamble "gloated" about Plaintiff's injuries and told Plaintiff he "was able to have [Plaintiff] moved and classified to a higher security level." *Id*. at 4.

At this early stage of the proceedings, the Court concludes that Plaintiff's sexual harassment claim against Mohammad is plausible. However, the Complaint fails to state a

calculated harassment claim against Defendant Gamble. Gamble's threats to move Plaintiff to a different security classification and his gloating over Plaintiff's injuries are closer to "de minimis harms" that do not rise to the level of an Eighth Amendment violation. *McKune*, 536 U.S. at 41; *see also Oltarzewski*, 830 F.2d at 139; *Martin*, 780 F.2d at 1338; *McFadden*, 713 F.2d at 147.

### B.    First Amendment Retaliation Claims

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: "(1) . . . that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de*

minimis] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest. The state unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

The Complaint alleges that, on May 12, 2024 (after Plaintiff reported the alleged sexual abuse by Mohammad), Defendant Gamble told Plaintiff that Gamble "could place [Plaintiff] with known enemies in known enemy units who have brutalized [Plaintiff] before." *Compl*. at 2. Gamble told Plaintiff to "keep silent and quit reporting" Mohammad's misconduct. *Id*.

This retaliation claim against Defendant Gamble is plausible, as Gamble's warning to keep silent and to stop reporting misconduct gives rise to a plausible inference that Gamble acted with a retaliatory motive. Also, being threatened with a move to a unit with known enemies who had attacked Plaintiff before would appear sufficient to chill a person of ordinary firmness from reporting such misconduct.

However, all of Plaintiff's other retaliation claims are not supported by anything other than a bare allegation that various Defendants—including Robert Howard, Kory Howard, Kolb, Mohammad, and Gamble (as to a separate retaliation claim)—acted with a retaliatory motive. This is insufficient to state a plausible claim under § 1983. *See Rizzo*, 778 F.2d at 532 n.4. Accordingly, Plaintiff's retaliation claims, other than Plaintiff's retaliation claim based on Gamble's actions on May 12, 2024, must be dismissed.

### C.     *Due Process Claims Against Slay and Young*

Plaintiff alleges that he was charged with a disciplinary offense report ("DOR") for violence against staff. Sergeant Slay was the disciplinary hearing officer. Despite assuring Plaintiff that Slay would review the video footage, Slay did not do so. Slay found Plaintiff guilty of the DOR. Defendant Young allegedly ignored IDOC disciplinary procedures and affirmed Sergeant Slay's finding on the DOR. *Compl*., Dkt. 3, at 5–6.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

*Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Because prisoners' liberty is necessarily circumscribed as a result of conviction, prisoners have a liberty interest in freedom from restraint only if a change occurs in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

With respect to a procedural due process claim regarding prison disciplinary proceedings and disciplinary segregation, a district court must analyze three factors in determining whether a prisoner has or had a liberty interest in avoiding discipline: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation (such as administrative segregation or protective custody); (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) whether the length of the plaintiff's sentence was affected. *Id*. at 486–87. If these factors are not met, a court may find there is no liberty interest in avoiding prison discipline, which means that a prisoner has no due process claim arising from the disciplinary proceeding.

If an inmate shows that he had a liberty interest protected by the Due Process Clause, the factfinder must then determine what process was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

Due process is a flexible concept and calls for such procedural protections as the particular situation demands. *Id*. at 321. Three factors inform whether an inmate has received the process to

which he was due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the prison context, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves." *Wilkinson v. Austin*, 545 U.S. 209, 227 (2005). Therefore, when reviewing a prison's procedures with respect to level-of-custody or restrictive housing determinations, the third *Mathews* factor—the government's interest—is "a dominant consideration." *Id*.

Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of (1) the charges, (2) the evidence against him, and (3) the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-66. An inmate has a right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.

Plaintiff's due process claims against Defendants Slay and Young are implausible because the Complaint contains no factual allegations regarding the factors identified in *Sandin* and discussed above. Therefore, Plaintiff's allegations do not support a reasonable inference that Plaintiff had a liberty interest in avoiding discipline, and Plaintiff's due process claims are subject to dismissal.

### D.    *Claims of Failure to Report and Failure to Pursue Criminal Charges*

Plaintiff alleges that various Defendants, including Defendants Engleson, Valley, Gamble, and Weekley, failed to report Plaintiff's abuse as a crime and refused Plaintiff access to the criminal justice system by, among other things, failing to preserve evidence and failing to file a

criminal complaint about the abuse in state court. *Compl*. at 4–7. However, there is no constitutional right to have another person criminally prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Johnson v. Craft*, 673 F. Supp. 191, 193 (S.D. Miss. 1987) ("The decision to prosecute a particular crime is within the authority of the state, and there appears to be no federal constitutional right to have criminal wrongdoers brought to justice."). Accordingly, Plaintiff's claims based on various Defendants' failures to ensure Plaintiff's access to the criminal justice system are implausible and must be dismissed.

### E.    Conspiracy Claims

The elements of a claim of conspiracy to deprive another of his civil rights are as follows: "(1) the existence of an express or implied agreement among the [defendants] to deprive him of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991) (*Bivens* action relying on § 1983 case, *Dooley v. Reiss*, 736 F.2d 1392, 1394-95 (9th Cir. 1984)).

Plaintiff may not proceed on his conspiracy claims, which he asserts against multiple Defendants. The claims are based solely on conclusory assertions that Defendants engaged in a conspiracy. *See Compl*. at 3–4, 6. Such allegations are insufficient to state a plausible claim for conspiracy to violate civil rights. *See Twombly*, 550 U.S. at 556–57 (case involving conspiracy claim under the Sherman Act); *see also Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). For these reasons, the Complaint fails to state a plausible conspiracy claim against any Defendant.

### F.     Claims of Violation of Prison Policy

Plaintiff contends that various Defendants did not comply with IDOC policies. However, a violation of prison policy is insufficient to support a plausible § 1983 claim. *See, e.g.*, *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (stating that, as long as minimum constitutional requirements are met, a prison need not comply with its "own, more generous procedures"), *abrogated on other grounds by Sandin*, 515 U.S. 472; *Huron Valley Hosp. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) ("[Section 1983] is thus limited to deprivations of *federal* statutory and constitutional rights. It does not cover official conduct that allegedly violates *state* law.") (relying on *Baker v. McCollan*, 443 U.S. 137, 146 (1979)). "It is not the function of this Court to review regulations established by prison authorities unless a constitutional violation is presented." *Lowrey v. Walton Cnty. Sheriff's Dep't*, No. 3:07-CV-121-CDL, 2008 WL 660332, at *3 (M.D. Ga. Mar. 5, 2008) (unpublished). Therefore, Plaintiff's claims based on violation of prison policy must be dismissed.

### G.     Claims Under the Idaho Criminal Code

Plaintiff also cites various Idaho criminal statutes, but the Court lacks jurisdiction to hear state criminal matters. Additionally, it does not appear that a private right of action is authorized under any of the cited sections.

In *Yoakum v. Hartford Fire Ins. Co.*, the Idaho Supreme Court considered whether an implied private right of action existed under a criminal statute. 923 P.2d 416, 421 (Idaho 1996). The court held that it did not, basing its decision on the following factors: (1) the statute was enacted to protect the general public, (2) there was no indication that the legislature intended to create a private cause of action, (3) the statute provided for a criminal punishment, and (4) there was no indication that providing an additional civil remedy was necessary to assure the effectiveness of the statute. *Id*. The *Yoakum* court noted that "in the absence of strong indicia of a

contrary legislative intent, courts must conclude that the legislature provided precisely the remedies it considered appropriate." *Id.* (relying on *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers*, 453 U.S. 1, 15 (1981).

The factors identified in *Yoakum* apply equally to the state criminal statutes cited by Plaintiff. Therefore, there is no private right of action under these statutes, and Plaintiff's claims based on the Idaho Criminal Code are implausible.

### H.      Claims Against the Idaho State Police

States and state entities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's claims against the Idaho State Police are implausible. Further, even if the Idaho State Police were a "person" for purposes of § 1983, it would be immune from suit in federal court under the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 16–18 (1890); *see also Quern v. Jordan*, 440 U.S. 332, 342–44 (1979) (holding that § 1983 does not waive state sovereign immunity); *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (holding that Idaho itself has not waived state sovereign immunity for constitutional claims). Accordingly, Plaintiff's claims against the Idaho State Police must be dismissed.

### I.      Claims Against Unidentified Defendants

The Court cannot effect service of process upon unidentified Defendants. Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the unidentified Defendants comes to light during discovery, Plaintiff may move to amend his Complaint to assert claims against those Defendants.

**4.      Request for Appointment of Counsel**

Plaintiff also seeks appointment of counsel. *Compl*. at 9. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not

have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorney fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

## 5.    Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that some are plausible, meaning that they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

---

[2]    The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

## ORDER

**IT IS ORDERED:**

1.      Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED.

2.      Plaintiff may proceed on the following claims:

   a.      Excessive force claims against Defendants Mohammad, Kory Howard, and Kolb.

   b.      Sexual abuse claims against Defendants Mohammad and Kolb.

   c.      Sexual harassment claim against Defendant Mohammad.

   d.      Unsanitary conditions claim against an unidentified Defendant.

   e.      Retaliation claim against Defendant Gamble based on Gamble's actions on May 12, 2024.

   All other claims against all other Defendants are DISMISSED, and Defendants Robert Howard, Crowl, Valley, Young, Slay, Engleson, Weekley, and the Idaho State Police are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[3]

3.      The remaining Defendants will be allowed to waive service of summons by

---

[3]      Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 22

executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the **Karin Magnelli, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706**, on behalf of the remaining Defendants.

4.      Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

5.      If Plaintiff receives a notice indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

6.      Unless otherwise ordered, the parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued contemporaneously with this Order.

7.      Any amended pleadings must be submitted, along with a motion to amend, by the later of (a) 150 days after entry of this Order or (b) 150 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

8.      Dispositive motions must be filed by the later of (a) 300 days after entry of this Order or (b) 300 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

9.      Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10.      The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11.      All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the

District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14. Pursuant to General Order 457, this action is hereby RETURNED to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: October 2, 2025

Amanda K. Brailsford
U.S. District Court Judge

INITIAL REVIEW ORDER BY SCREENING JUDGE - 25