UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON N. LONG,<br><br>Plaintiff,<br><br>v.<br><br>HUMAYUN MOHAMMAD; ERIN KOLB; KORY HOWARD; and RYAN GAMBLE,<br><br>Defendants. | Case No. 1:25-cv-00375-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Jason N. Long is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights matter.

Plaintiff has been allowed to proceed on the following civil rights claims under 42 U.S.C. § 1983: (1) excessive force claims against Defendants Humayun Mohammad, Kory Howard, and Erin Kolb; (2) sexual harassment claims against Defendant Mohammad; (3) sexual abuse claims against Defendants Mohammad and Kolb; and (4) a retaliation claim against Defendant Ryan Gamble.[1] *See Init. Rev. Order*, Dkt. 7, at 22.

[1] Though Plaintiff also was initially allowed to proceed on claims of unsanitary conditions against an unidentified shift commander, Plaintiff has never identified this Defendant. Accordingly, this claim must be dismissed.

Defendants Howard, Kolb, and Gamble have filed a Motion for Summary Judgment, and Defendant Mohammad has filed a separate Motion for Summary Judgment. The Motions are ripe for adjudication.[2] All Defendants argue that Plaintiff did not exhaust available administrative remedies as to any of his claims.

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkts. 17, 18. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, and for the reasons that follow, the Court will grant Defendants' Motions for Summary Judgment.

## STANDARD OF LAW GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

---

[2] The Court grants Plaintiff's request to file a sur-reply. *See* Dkt. 26 at 2.

In resolving a summary judgment motion, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id*.

The Court may not determine the credibility of affiants or weigh the evidence set forth by the parties when considering a motion for summary judgment. Although all reasonable inferences that can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987), the Court is not required "to draw unreasonable inferences from circumstantial evidence," *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that the material facts are not in dispute, the moving party may cite to particular materials in the record or show that the non-moving party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson*, 477 U.S. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Instead, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Statements in a brief, unsupported by the record, cannot be used to create a dispute of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

The Court must consider "the cited materials" in considering a motion for summary judgment, but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *see also Keenan v. Allan*, 91 F.3d 1275, 12779 (9th Cir. 1996) (stating that, once the moving party meets its initial burden, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment.") (internal quotation marks omitted). That is, "if a defendant moving for summary judgment has produced enough evidence to require

the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

In opposing a motion for summary judgment, the non-moving party must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order If the non-moving party fails to produce such evidence, or if the evidence produced is not enough to create a genuine issue of material fact, the Court "is not required (or even allowed) to assume the truth of the … allegations in the complaint." *Butler*, 370 F.3d at 963.

Only admissible evidence may be considered on summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (internal quotation marks omitted). Rather, the affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id*. (quoting *United States v. Dibble,* 429 F.2d 598, 602 (9th Cir. 1970)). The Ninth Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Id*. (internal quotation marks omitted).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

In cases involving pro se inmates, courts liberally construe the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, although pro se inmates are exempted "from *strict* compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto*, 882 F.3d at 872.

**FACTUAL BACKGROUND**

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's

version of facts, insofar as that version is not blatantly contradicted by clear documentary evidence in the record. *See Scott*, 550 U.S. at 380.

Plaintiff asserts that, in May 2024, Defendant Correctional Officer Mohammad sexually assaulted him by coming up behind Plaintiff and fondling his genitals. *Compl.*, Dkt. 3, at 3. Defendant Officer Kolb witnessed the incident but did not intervene. Mohammad also allegedly sexually harassed Plaintiff by "threatening to beat, rape, and kill" him. *Id*. at 2.

Plaintiff filed a complaint with prison authorities regarding Mohammad's actions under the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30302 *et seq*.[3] Defendant Officer Gamble investigated the complaint. During the course of that investigation, Gamble allegedly threatened Plaintiff and told him that, if Plaintiff continued with his complaint against Mohammad, Gamble "could place [Plaintiff] with known enemies in known enemy units who have brutalized [Plaintiff] before." *Compl*. at 2.

Mohammad and Defendant Kory Howard allegedly used excessive force against Plaintiff by, among other things, spraying Plaintiff with OC spray and overextending his joints even though he was complying with officers' orders. *Id*. at 3–5. Plaintiff also contends that Defendant Kolb witnessed this use of excessive force but did not intervene. *Id*. at 3.

---

[3] PREA "was enacted to address the problem of rape in prison by creating and applying national standards to prevent, detect, and respond to prison rape, and by ensuring compliance of state and federal prisons by conditioning eligibility for federal grant money on compliance with the standards." *Barber v. Cox*, No. 1:17-CV-00318-BLW, 2019 WL 454090, at *1 n.1 (D. Idaho Feb. 5, 2019) (unpublished).

## DISCUSSION

### 1. Standards of Law Governing Exhaustion

Under the Prison Litigation Reform Act of 1995 ("PLRA"),[4] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a). "[B]ecause no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings," "proper" exhaustion of remedies is required—meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Courts are not permitted to "read futility or other exceptions into [the PLRA's] statutory exhaustion requirements." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

[4] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

Failure to exhausat is an affirmative defense. If a defendant shows that (1) an available administrative remedy existed and (2) the plaintiff failed to properly exhaust that remedy, then the burden shifts to the plaintiff to produce evidence "showing that there is something *in his particular case* that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (emphasis added). The ultimate burden of proving failure to exhaust, however, remains with the defendant. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).

An inmate is required to exhaust those remedies that are "available." That is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth*, 532 U.S. at 738). A court must consider the specific facts of the prisoner's case "when deciding whether administrative remedies were properly exhausted." *Fuqua v. Ryan*, 890 F.3d 838, 850 (9th Cir. 2018).

There are three situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643–44. When the prison's

exhaustion process is "essentially unknowable" because the "rules are so confusing that no reasonable prisoner can use them," then administrative remedies are "no longer available." *Id*. at 644 (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. For example, if prison officials prohibited an inmate from accessing "the necessary grievance forms within the prison's time limits for filing the grievance," the plaintiff's failure to exhaust will be excused. *Albino*, 747 F.3d at 1172–73.

**2. IDOC's Grievance Process**

The grievance process of the IDOC consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out a Concern Form, addressed to the staff person "most capable of responding to and, if appropriate, resolving the issue." *First Declaration of Leilani Howard ("First L. Howard Decl.")*, Dkt. 19-4, ¶ 6.

If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then submit a Grievance Form. *Id.* ¶ 7. A grievance must be filed within 30 days of the incident giving rise to the grievance. The grievance must also include "specific information including the nature of the complaint, dates, places, and names," and the inmate "must suggest a solution to the issue." *Id*. ¶ 8.

If an inmate is not satisfied with the response to a grievance, he may file a grievance appeal. The appellate authority, usually the warden, then reviews the appeal and decides whether the grievance response was appropriate. *Id.* ¶ 10.

The grievance process is not completed until the inmate has gone through all three steps—Concern Form, Grievance Form, and grievance appeal. An inmate "who does not file a Grievance Form, files a Grievance outside the time limit, or never appeals the response to such Grievance, does not complete the IDOC grievance process" and, as a result, has not exhausted available administrative remedies. *Id.* ¶ 11.

### 3. Defendants Are Entitled to Summary Judgment Because Plaintiff Failed to Exhaust Available Administrative Remedies

Defendants have submitted evidence showing that Plaintiff did not properly file a grievance related to any of his current claims.

Within eight months after the events described in the Complaint, Plaintiff filed numerous grievances regarding confiscation of property, destruction of digital property, outgoing emails and video messages, and medical treatment issues. *Ex. A to Declaration of Brittany Crockett ("Crockett Decl.")*, Dkt. 19-3 at 5; *Ex. C to First L. Howard Decl.*, Dkt. 19-4 at 36; *Ex. A to Second Declaration of Leilani Howard ("Second L. Howard Decl.")*, Dkt. 37-4 at 56–57, 62–65, 69. None of these grievances addressed the claims Plaintiff raises in this action.

Because Defendants have met their initial burden of showing Plaintiff did not exhaust available administrative remedies, the burden now shifts to Plaintiff to produce admissible evidence raising a genuine dispute of material fact. Plaintiff has not done so.

Plaintiff claims that he filed a grievance against Gamble on October 2, 2024. *Pl.'s Sur-Reply*, Dkt. 26, at 3. However, Plaintiff does not dispute that this grievance was returned to him as untimely because it was not submitted within 30 days of Gamble's allegedly retaliatory threat, which occurred in May 2024. *Ex. 6 to Pl.'s Memo. in Opp. to First Mot. Summ. J.*, Dkt. 23-1 at 3. Complying with the prison's grievance deadlines is required under the PLRA. *See Woodford*, 548 U.S. at 90–91. Therefore, Plaintiff's October 2024 grievance did not exhaust available administrative remedies as to Plaintiff's claim against Gamble.

Plaintiff points to Exhibits 1 through 4 to his opposition briefs as evidence that he filed grievances regarding his claims in June 2024. However, these exhibits are concern forms, not grievances. *See Ex. 1–4 to Memo. in Opp. to First Mot. Summ. J.*, Dkt. 23-2. The documents do not raise a genuine issue as to whether Plaintiff filed a *grievance* about his claims—the second required step in the IDOC's grievance process.

Plaintiff also relies on Exhibit 7 as evidence that he submitted a grievance with respect to a "non-answer" from Defendant Nicodemus; Plaintiff contends this exhibit is "a date certified copy" of a grievance. *Memo. in Opp. to Second Mot. Summ. J.*, Dkt. 40, at 2. But Exhibit 7 is not, in fact, a grievance. Instead, it appears to be an excerpt from Plaintiff's handwritten personal journal, *see* Dkt. 40-1 at 7–8, and Plaintiff has not established that this hearsay evidence is admissible. *See* Fed. R. Evid. 802.

Additionally, Plaintiff has submitted affidavits from Inmates Miller and Mangum, who filed grievances about the incident described in the Complaint. Staff responded to these grievances by informing Inmates Miller and Mangum that they could not file

grievances about something that happened to Plaintiff. *Affidavit of Wesley Miller*, Dkt. 40-1, at 2; *Affidavit of Jeffrey Mangum*, Dkt. 26-1 at 2. These affidavits simply do not raise a genuine dispute regarding whether Plaintiff *himself* filed a timely grievance raising his current claims.

Plaintiff also claims that he properly exhausted his claims through the prison's Disciplinary Offense Report ("DOR") process and the prison's PREA procedures. *Memo. in Opp. to First Mot. Summ. J.*, Dkt. 23, at 1–2, 9. Plaintiff contends that these processes are additional avenues through which inmates can properly exhaust their claims.

With respect to Plaintiff's contention that he raised his claims during the DOR process, administrative remedies may be deemed unavailable if a prison has a confusing policy that does not make clear which types of claims should be exhausted through the grievance process versus through the DOR process. *See Campbell v. Yordy*, No. 1:15-cv-00529-EJL, 2016 WL 7256812, at *6 (D. Idaho Dec. 15, 2016) (unpublished) (stating that an inmate's claim raised in DOR process could adequately exhaust the claim if "the rules regarding which claims had to be exhausted in DOR proceedings versus the grievance process were unclear."). But Plaintiff has not produced any evidence that he was given such confusing or misleading information regarding which process he should use to grieve his claims. In fact, the evidence shows the opposite.

The applicable IDOC grievance policy states that, although an inmate can raise challenges to disciplinary proceedings through the DOR process, an inmate should use the grievance process, *not* the disciplinary process, to exhaust any claims other than challenges to the DOR itself. That policy provides the following example:

> An offender claims his [housing] placement resulted in a fight for which he received a DOR. [For] [a]n appeal to the DOR itself, the offender must use the DOR appeal process. The offender could file a grievance regarding [the housing] placement.

*Ex. A to First L. Howard Decl.*, Dkt. 19-4 at 15. The policy is clear: claims challenging a DOR itself should be raised in the DOR proceedings, while other claims should, instead, be pursued through the grievance process.

This Court has previously relied on this same policy language to conclude that an inmate did not properly exhaust his conditions-of-confinement claims by raising them through the DOR process. *Campbell*, 2016 WL 7256812, at *7. Plaintiff's claims in this action are not challenges to the DOR and thus should have been exhausted through the grievance process. Plaintiff's use of the DOR process to raise his claims did not serve to exhaust available administrative remedies.

Plaintiff also asserts that he exhausted his current claims in his PREA complaint to prison authorities. However, the Ninth Circuit has held that PREA procedures do not excuse an inmate's failure to exhaust claims through a prison's required administrative grievance process. *Porter v. Howard*, 531 F. App'x 792, 793 (9th Cir. 2013) (unpublished). Accordingly, Plaintiff's reliance on his PREA complaint for exhaustion is misplaced.

Plaintiff also argues that Defendants have submitted "false evidence … in order to subvert their responsibility to provide discovery." *Memo. in Opp. to First Mot. Summ. J.* at 1.

Defendants' evidence is properly authenticated, *see, e.g., First and Second L. Howard Decls*., and Plaintiff has submitted nothing to support his contention that the evidence is falsified. Plaintiff's discovery argument is unpersuasive because Defendants have provided their exhaustion-related evidence as required by the Court's previous Order. *See* Dkt. 8 at 3 ("Step 1 [procedural discovery] applies if, instead of filing an answer, a defendant files a motion … that addresses preliminary issues[] such as failure to exhaust administrative remedies …. If Step 1 applies, the defendant must submit with any such motion all information, items, and documents related to the subject matter of the motion.") (footnote omitted). Discovery on the merits of Plaintiff's claims is not relevant at this stage of the proceedings. *See id.* ("Step 2: [Discovery on] Merits of Claims and Defenses. Step 2 applies to claims upon which a plaintiff has been authorized to proceed in an initial or successive review order when (a) the defendant files no preliminary motions that would limit discovery, or (b) some or all of the claims have survived a preliminary Rule 12(b) motion to dismiss or Rule 56 motion for summary judgment.").

Finally, Plaintiff claims that Defendant Mohammad's Motion for Summary Judgment is untimely. *Memo. in Opp. to Second Mot. Summ. J.*, Dkt. 40, at 2. Plaintiff is mistaken. The Motion was filed on June 17, 2026, over a month before the July 29 deadline for filing dispositive motions. *See Init. Rev. Order*, Dkt. 7, at 24.

Defendants have met their burden of showing there is no genuine dispute of material fact regarding exhaustion, and Plaintiff has not rebutted that evidence.

## CONCLUSION

For the reasons explained above, the Court concludes that Plaintiff failed to exhaust available administrative remedies with respect to the claims in this action and that Defendants are entitled to judgment as a matter of law. Accordingly, the Court will grant Defendants' Motions for Summary Judgment.

## ORDER

**IT IS ORDERED** that Defendants' Motions for Summary Judgment (Dkt. 19 and 37) are **GRANTED**, and judgment will be entered in favor of Defendants.

DATED: August 17, 2026

Honorable Debora K. Grasham
United States Magistrate Judge